UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

A TOUCH OF MERENGUE, LLC -
THE ATOM,
    Plaintiff,

v.                                          C. A. No. 14-117-M

UNITED STATES OF AMERICA,
    Defendant.

## ORDER

Plaintiff A Touch of Merengue, LLC – The Atom ("The Atom") challenges its permanent disqualification from the Supplemental Nutrition Assistance Program ("SNAP") by the Food and Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA"). The Atom was banned from SNAP for engaging in trafficking of Electronic Benefit Transfers ("EBT"). Trafficking is defined as "[t]he buying, selling, stealing or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards ... for cash or consideration other than eligible food." 7 C.F.R. § 271.2; 7 U.S.C. § 2021(b)(3)(B).

Before the Court is the Defendant United States' Motion for Summary Judgment, where the United States argues that the USDA's decision to disqualify The Atom was soundly supported by the undisputed record and neither arbitrary nor capricious as a matter of law. (ECF No. 4.) The Atom objected. (ECF No. 7.) For the reasons stated below, the Court GRANTS the United States' motion and enters judgment in its favor.

**I.    FACTS**

The Atom is a convenience store located at 47 Academy Avenue in Providence, Rhode Island. The Atom accepted payment for eligible food items through the SNAP, a program

1

designated by Congress to alleviate hunger and malnutrition among poor households. Eligible participants receive an EBT card, which is linked to their SNAP account, containing funds that they can use to purchase food. The card is swiped at the store at the time of purchase, the customer enters a personal identification number, and the amount is deducted from their monthly SNAP benefits.

The FNS is able to monitor the SNAP and EBT transactions in order to detect and eliminate fraud. It uses an Anti-Fraud Locator using Electronic Benefit Retailer Transactions ("ALERT") program to detect trafficking. The Atom appeared on a USDA ALERT Watch List in 2013, prompting an investigation and analysis of EBT redemptions from May 2013 through July 2013. FNS identified four categories of irregular transaction patterns – 1) rapid sets of purchases by different households made too rapidly to be credible, 2) rapid and repetitive transactions by the same households; 3) the depletion of the majority of monthly benefits in one transaction or within a short period; and 4) a large volume of high dollar transactions. On June 5, 2013, an FNS reviewer visited The Atom to evaluate the market's EBT transactions.

On August 28, 2013, FNS sent a letter to Joseph Manzanillo, The Atom's owner, informing him that FNS was charging The Atom with trafficking. The letter identified the irregular transaction patterns and advised Mr. Manzanillo of his right to respond within ten days of the letter. Mr. Manzanillo responded to the letter, asserting essentially that the activity can be explained by the fact that his store sells bulk groceries and provides free delivery of those bulk purchases. FNS reviewed Mr. Manzanillo's responses and found that they did not overcome the finding of trafficking. FNS permanently disqualified The Atom from the EBT program in September 2013. Mr. Manzanillo requested administrative review and the disqualification was affirmed. This suit followed.

## II. STANDARD OF REVIEW

Summary judgment can be granted only when the Court finds that there is no genuine issue of material fact and that the undisputed facts give rise to an entitlement to judgment as a matter of law. *Wilson v. Moulison N. Corp.*, 639 F.3d 1, 6 (1st Cir. 2011). The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in her favor. *Id.* However, the non-moving party "must point to 'competent evidence' and 'specific facts' to stave off summary judgment." *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)). A summary judgment motion cannot be defeated by "conclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010).

The Court must conduct a de novo review to "determine the validity of the questioned administrative action." 7 U.S.C. § 2023(a)(15). This de novo review, however, is limited to the USDA's determination of whether a SNAP violation took place. *Broad St. Food Mkt., Inc. v. United States*, 720 F.2d 217, 220 (1st Cir. 1983); *Objio v. United States*, 113 F. Supp. 2d 204, 208 (D. Mass. 2000). If the Court finds that the USDA's finding was correct, review of the sanction that the USDA imposed is limited to whether that sanction was arbitrary or capricious. *Id.* A store disqualified from participating in SNAP bears the burden of proving, by a preponderance of the evidence, that the USDA's decision was "invalid." *Fells v. United States*, 627 F.3d 1250, 1253 (7th Cir. 2010).

## III. ANALYSIS

As an initial matter, The Atom argues that this case cannot be decided on summary judgment and that it is entitled to a trial de novo on whether there was a violation because CFR

3

§ 279.7 (c) provides for one where "a court shall determine the validity of the questioned administrative action." The Government counters that summary judgment is procedurally appropriate because a party's right to a trial on the merits depends on the existence of a triable issue – if the Court determines on summary judgment that no triable issue of fact exists, then the non-movant is not entitled to a merits trial and summary judgment is appropriate.

The plain language of the statute is that "[t]he suit in the United States district court or State court [filed by the store after adverse administrative decision] shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue. . . ." 7 U.S.C.A. § 2023 (a)(15). "The 'trial de novo' which § 2023(a) contemplates signifies that, as to violation-related matters . . ., 'the court should make an independent determination of the issues.'" *Della Valle v. U.S. Dep't of Agric.*, 626 F. Supp. 388, 391 (D.R.I. 1986) (quoting *United States v. First City Nat'l Bank of Houston*, 386 U.S. 361, 368 (1967)); *see also Broad St. Food Mkt., Inc.*, 720 F.2d at 219-20 (quoting H.R.Rep. No. 464, 95th Cong., 1st Sess. 397–98, *reprinted in* 1977 U.S. Code Cong. & Ad. News 1978, 2326–27); *Redmond v. United States*, 507 F.2d 1007, 1011 (5th Cir. 1975). The de novo standard refers to a district court's determination on the SNAP violation based on the facts in the administrative record and any new evidence the parties present. *Della Valle*, 626 F. Supp. at 391. Because there is no automatic right to a trial by jury and the Court is charged with a de novo review, summary judgment is a proper means of addressing the case if no genuine issues of material fact exist in the record before the Court. If the Court determines based on the record before it that no disputed material facts exist, summary judgment is appropriate. Now, the Court will move on to those record materials.

The Court has reviewed the entire administrative record de novo, including The Atom's rebuttals to the USDA's conclusions that it trafficked in EBT benefits, and the USDA's decision to disqualify The Atom. Without resorting to the statistical data and based solely on its agent's observations of the store itself, the USDA saw no evidence of bulk sales or deliveries during the store inspections; determined that the store's minimal stock did not support the excessive number of large EBT transactions during the review period; observed that the store is small at only 540 square feet; observed minimal stock and a limited variety and quantity of eligible food items; observed a cluttered and small checkout counter enclosed in Plexiglas, allowing very little surface area to process multiple items and/or more than one customer at a time; a lack of handheld shopping baskets or carts; a broken cooler; no optical scanner, only one cash register and one EBT point-of-service device; and finally observed that the store sells almost exclusively inexpensive eligible food items.

It is important to note that The Atom does not dispute any of the facts that the USDA presented in its decision or in its motion currently before the Court. In response to the USDA's statistics showing multiple transactions done too rapidly to be credible, The Atom explains that these transactions are appropriate because it is not unusual for people to make purchases on the first of the month and most of these transactions were for small purchases made in the store followed by bulk purchases that were later delivered. In response to the issue of multiple transactions on individual accounts in short periods, The Atom asserts that most of these transactions were done in the beginning of the month when the funds become available, some were for bulk purchases that were entered in separately rather than as one large purchase, and argued that only about ten transactions a month occurred in an unusually short time and those were caused by errors in the way people were being billed for purchases at the register. Against

5

the evidence of large numbers of customers depleting their EBT accounts in a single transaction, The Atom argues that this pattern is consistent with the practice of bulk purchasing at the store. In response to the USDA's findings that EBT transactions at the store were excessively large, The Atom argues that a great majority of the transactions highlighted did not exceed $100.

The Atom's main defense to each of the four categories of suspicious SNAP activity is that the market carries bulk items such as rice, flour, oil, and sugar and offers a delivery service for those bulk items, which explains the large, rapid purchases, depleting the SNAP allotment, despite the lack of counter and storage space. As evidence, The Atom submitted an advertisement (ECF No. 3 at A.R. 182), one bulk purchase receipt for $67.98 showing that the items were delivered (*id.* at A.R. 175), and three pictures of The Atom's delivery truck (*id.* at A.R. 176-179). The Atom has not submitted any evidence to rebut the store-generated statistical evidence USDA used in its determination that The Atom was trafficking.

The Court finds that The Atom's explanations and the scant evidence are unconvincing, conclusory, and speculative in the face of the USDA's statistics. The Atom cannot sustain its burden by surmising what its customers may or may not be doing or by making unreasonable and impractical suppositions about how hundreds of dollars of transactions could be completed between several seconds or minutes in a 540 square foot convenience store with minimal counter space, no shopping carts, and a manual cash register system. *See Kahin v. United States*, 101 F. Supp. 2d 1299, 1303 (S.D. Cal. 2000) (granting summary judgment even where plaintiff's explanations of his customers' spending patterns "may tend to negate some of the inferences from the EBT data" but do not "sufficiently account for all the suspicious activity.") The pictorial evidence of a delivery truck and advertisement for bulk items fails to raise disputed

issues of material fact sufficient to rebut the observations of the physical plant of the store and to overcome the USDA's statistics and ultimately, its motion for summary judgment.

The transaction data patterns suggest that The Atom's EBT transactions were made in rapid sequence, were from individual accounts in suspiciously short time frames, were excessively large, and depleted or ran down an EBT account to be believed. The Court finds that The Atom's explanations and rebuttals to the USDA's evidence are implausible and that The Atom has failed to meet its burden in the face of the USDA's summary judgment motion. It has presented no evidence to show that the USDA's decision was invalid – in fact, it has presented no evidence rebutting the data that the USDA collected to prove it was engaged in EBT trafficking. In this case, the pictures The Atom submitted are not worth a thousand words.

Now that the Court has found, based on a de novo review, that the USDA's finding that The Atom engaged in trafficking as defined in 7 C.F.R. § 271.2 is valid, it will move on to review the permanent disqualification sanction. The sanction will only be overturned if it was arbitrary and capricious. *Broad St. Food Mkt.*, 720 F.2d at 220. Because the governing regulation, 7 C.F.R. § 278.6(e)(1), requires permanent disqualification for EBT trafficking, the Court cannot find that the USDA's sanction was arbitrary or capricious and upholds The Atom's permanent disqualification.

Based on the undisputed evidence in the record and for the reasons stated herein, the USDA's motion for summary judgment (ECF No. 4) is GRANTED. Judgment shall enter for the Defendant United States of America.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

November 20, 2014